The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on November 21, 2022, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: November 21, 2022**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| GUERINO & CRYSTAL L. CONTE, | ) | Case No. 21-13189 |
|     Debtors. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| GBAZ, INC., | ) | |
|     Plaintiff. | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. 21-1078 |
| | ) | |
| CRYSTAL L. CONTE, *et al.*, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OF OPINION[1]

This adversary proceeding is currently before the Court on the plaintiff's unopposed motion for summary judgment. The plaintiff, GBAZ, Inc., argues that

---

[1] This Opinion is not intended for official publication.

this Court should deem nondischargeable under 11 U.S.C. § 523(a)(2)(B) a $68,500 judgment that GBAZ obtained against the debtors, Mr. and Mrs. Conte, in connection with the purchase of GBAZ's Georgio's Oven Fresh Pizza franchise in Brunswick, Ohio. GBAZ contends that the Contes submitted a personal financial statement that misrepresented their net worth, and that GBAZ relied on the statement's inflated figures in deciding to extend the loan to the Contes. For the reasons that follow, the Court denies GBAZ's motion for summary judgment.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 157(a) and 1334 and Local General Order 2012-7, entered by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On September 20, 2021, the Contes filed for chapter 7 bankruptcy (Case No. 21-13189). On October 18, 2021, the chapter 7 trustee held the § 341 meeting of creditors. Three days later, the trustee filed a no asset report (Case No. 21-13189, Docket No. 12). On December 20, 2021, GBAZ filed the present adversary proceeding. On December 29, 2021, the Contes received their chapter 7 discharge (Case No. 21-13189, Docket No. 21).

2

On February 22, 2022, the Contes filed an answer to GBAZ's complaint (Docket No. 6). That same day, they also moved to dismiss the adversary proceeding for GBAZ's failure to meet the December 17, 2021, deadline under Bankruptcy Rule 4007(c) to file a nondischargeability complaint (Docket No. 7). On April 25, 2022, the Court denied the Contes' motion to dismiss under the principle of equitable tolling (Docket Nos. 11 and 12). On September 6, 2022, GBAZ filed a motion for summary judgment, but it failed to serve its motion on the Contes (Docket No. 17). Though the Contes retained counsel in their main bankruptcy case, they are representing themselves in this adversary proceeding. The Court directed GBAZ to correct service and file an amended certificate of service by October 12, 2022 (Docket No. 18). The Court also directed the Contes to respond to GBAZ's motion by October 26, 2022, if they received service of the motion (Docket No. 18). GBAZ filed an amended certificate of service the same day of the Court's order, which confirmed service of its motion and attachments by certified mail to the Contes' home address (Docket No. 19). The Contes never filed a response.

While GBAZ properly served the Contes at the address listed in their bankruptcy petition, it is possible that the Contes no longer lived at that address. The Court notes that it granted on August 1, 2022, a motion for abandonment filed

3

against the debtors' home address (Case No. 21-13189, Docket No. 29). The debtors never updated their address with the Court, though they are under a continuing duty to do so. Fed. R. Bankr. P. 4002(a)(5). And Bankruptcy Rule 7004 only obligates GBAZ to serve the Contes by first class mail at "the address shown in the petition or such other address as the debtor may designate in a filed writing." Fed R. Bankr. P. 7004(b)(9).

FACTUAL HISTORY

Unless otherwise indicated, the following facts are undisputed. In the spring of 2018, the Contes approached GBAZ to purchase GBAZ's Georgio's Oven Fresh Pizza franchise in Brunswick, Ohio. They asked if GBAZ would be willing to finance their purchase of the franchise since they had no cash to do so. GBAZ agreed, but only if the Contes provided financial information showing a capacity to run the franchise and repay the loan. GBAZ also explained that the corporate franchisor would need to approve the sale.

On July 13, 2018, Mrs. Conte submitted a franchise application to Georgio's Oven Fresh Pizza (Pl.'s Mot. Summ. J., Ex. B). On the franchise application, she answered that she owned her own home and that it was worth $295,000 with a mortgage balance of $162,000. She listed that she had approximately $9,000 in a bank account but did not disclose any other assets. The franchise application also

4

asked for educational background. Mrs. Conte answered that she graduated high school, went to college for three years but did not finish, and had her real estate license. That same month, she and her husband provided GBAZ with a personal financial statement (Pl.'s Mot. Summ. J., Ex. V). On the financial statement, the Contes listed a net worth of $618,000, mostly comprising of their home valued at $280,000, a life insurance policy with a cash surrender value of $175,000, and nonspecific business inventory worth $250,000. They disclosed they had $162,000 remaining on their mortgage as well as car loans and credit card debt totaling another $35,800.

GBAZ accepted the Contes' representations in their franchise application and financial statement and, on November 5, 2018, entered into an agreement to sell the franchise to the Contes for $70,000, which GBAZ agreed to finance (Pl.'s Mot. Summ. J., Ex. A). The Contes made one $1,500 payment then stopped paying.

On April 27, 2021, GBAZ obtained a judgment against the Contes in the Cuyahoga County Court of Common Pleas for $68,500, plus interest (Pl.'s Mot. Summ. J., Ex. D). But before GBAZ could execute the judgment, the Contes filed for chapter 7 bankruptcy (Case No. 21-13189, Docket No. 1).

In their schedules, the Contes disclosed, among other things, that they owned a home worth $253,700 with an outstanding mortgage of $163,743.10; two cars together worth $19,000 with $11,409 outstanding on the lien for one of the cars; a life insurance policy with a surrender value of $0; and $1,500 in tools (Case No. 21-13189, Docket No. 1). The Contes also scheduled a 100 percent interest in "Conte Pizza, Inc.," which went out of business in August of 2020. Mr. Conte listed himself as a self-employed tile setter earning $3,762 per month. Mrs. Conte was not employed and earned no income. Their monthly expenses were $4,806.43.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, which Bankruptcy Rule 7056 makes applicable to adversary proceedings, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. Civil Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*,

671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id*. at 570.

"Where a party fails to respond to a motion for summary judgment, . . . the court must nevertheless satisfy itself that the moving party has met the demands of Fed. R. Civ. P. 56 before granting the motion." *Smith v. Downey (In re Downey)*, No. 18-3040, 2018 WL 6060344, at *2 (Bankr. N.D. Ohio Nov. 19, 2018) (citing *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 407 (6th Cir. 1992)). A court may not use a party's failure to respond "as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979)).

Moreover, " '[s]ummary judgment is particularly inappropriate' when an individual's intent is at issue." *Buckeye Ret. Co., LLC v. Swegan (In re Swegan)*, 383 B.R. 646, 656 (B.A.P. 6th Cir. 2008) (quoting *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002)). When the debtor's state of mind is an element, a court should only grant summary judgment "when the evidence is so one-sided that no reasonable person could decide the contrary." *W. Hills Farms, LLC v. ClassicStar*

*Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*, 727 F.3d 473, 484 (6th Cir. 2013) (internal quotations and citation omitted).

## DISCUSSION

Under 11 U.S.C. § 523(a)(2)(B), a debtor may not receive discharge of an extension of credit obtained by:

(B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such . . . credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive[.]

GBAZ must prove each of these elements by a ponderance of the evidence. *Pazdzierz v. First Am. Title Ins. Co. (In re Pazdzierz)*, 718 F.3d 582, 586 (6th Cir. 2013) (citing *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661 (1991)). And this Court must strictly construe the exception to discharge against GBAZ. *Id.* (citing *Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998)).

There is no dispute that the personal financial statement the Contes submitted to GBAZ was "a statement in writing" within the meaning of

§ 523(a)(2)(B). While not signed, the debtors prepared the statement and submitted it to GBAZ as their own. *See In re Batie*, 995 F.2d 85, 89 (6th Cir. 1993).

A statement in writing is "materially false" if it "paints a substantially untruthful picture of the debtor's financial condition by misrepresenting information of a type which would normally affect the decision to grant credit." *Alside Supply Ctr. v. Kromar (In re Kromar)*, 258 B.R. 692, 697 (Bankr. N.D. Ohio 2001) (internal quotations and citation omitted). The "size of the discrepancy" may in part determine whether the false statement is material. *Agrifund, LLC v. Blankenship (In re Blankenship)*, No. 16-10839, 2019 WL 7602322, at *9 (Bankr. W.D. Tenn. Jan. 2, 2019), *aff'd*, No. 19-01045-STA-JAY, 2019 WL 5304212 (W.D. Tenn. Oct. 21, 2019) (citation omitted). GBAZ argues that the discrepancies between the Contes' 2021 bankruptcy schedules and their 2018 financial statement prove that their financial statement was false. Specifically, the Contes' bankruptcy schedules valued their house at $253,700, a life insurance policy at $0.00, business property at $1,500, one of their vehicles at $15,000, and listed various debts that were not in their 2018 financial statement, including a 2009 debt to the IRS for $10,500. In short, the Contes had a net worth in 2021 far less than the $618,000 they told GBAZ they

9

21-01078-aih    Doc 21    FILED 11/21/22    ENTERED 11/21/22 14:07:07    Page 9 of 15

had in 2018. Discrepancies between a debtor's financial statement and subsequent bankruptcy schedules can circumstantially prove that the earlier financial statement was false. *See, e.g., Ky. Neighborhood Bank v. Ireland (In re Ireland)*, 441 B.R. 572, 578 (Bankr. W.D. Ky. 2011) (discrepancy where debtors' financial statement listed $1,364,152 in assets but schedules listed assets of $26,105 proved financial statement false); *Post Rd. Partners LLC v. Walters (In re Walters)*, 359 B.R. 156, 160 (Bankr. E.D. Ky. 2006) (similar discrepancy where debtor's financial statement listed net worth of $1,270,500 but schedules listed liabilities exceeding assets by $932,636 proved financial statement false). But discrepancies are not always dispositive. *See, e.g., Nissan Motor Acceptance Corp. v. Ferrell (In re Ferrell)*, 213 B.R. 680, 686 (Bankr. N.D. Ohio 1996) ($6,820 discrepancy in yearly income "cause for concern" but insufficient for summary judgment).

When the available evidence is viewed in a light most favorable to the Contes, the Contes' 2018 financial statement was materially false in that it represented that they had a net worth at least double what they truly had. Specifically, the Contes asserted in their financial statement that they had a life insurance policy with a cash value of $175,000, which they later scheduled as $0.00, and business inventory worth $250,000, which they later scheduled as $1,500. The reasonable inference to draw from these discrepancies is that the

10

Contes provided false values in their 2018 financial statement. Moreover, given the size of the discrepancy, those falsehoods were material. *See In re Sharp*, 357 B.R. 760, 765 (Bankr. N.D. Ohio 2007). While there may be some explanation as to how the two assets diminished in value by over 99 percent in the span of three years, that evidence is not before the Court. The Court must draw reasonable inferences from the evidence in the nonmovant's favor, but it cannot speculate about evidence that does not exist in the record. *See Meat Town Inc. v. Sentinel Ins. Co.*, 852 F. App'x 925, 927 (6th Cir. 2021) (quoting *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018)).

Lastly, as statements of net worth, they were indisputably statements "respecting the [debtors'] financial condition." *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1764 (2018).

The two remaining elements for the Court's consideration are: (1) did GBAZ reasonably rely on the Contes' personal financial statement, and (2) did the Contes provide the financial statement with the intent to deceive?

### 1. Reasonable Reliance

Reasonable reliance requires both that GBAZ actually relied on the Contes' misrepresentations in their financial statement (reliance in fact), and that GBAZ's reliance was reasonable. *Oster v. Clarkston State Bank (In re Oster)*, 474 F. App'x

11

422, 425 (6th Cir. 2012) (citing *Field v. Mans*, 516 U.S. 59, 68, 116 S. Ct. 437, 442 (1995)). This is a higher standard than that of "justifiable reliance" under § 523(a)(2)(A). *Id*. GBAZ says it actually relied on the Contes' false financial statement, and that fact is not in dispute. The only question then is whether GBAZ's reliance was reasonable. In the Sixth Circuit, courts are to consider five factors when determining whether a creditor's reliance was reasonable:

> (1) whether the creditor had a close personal relationship or friendship with the debtor;
>
> (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust;
>
> (3) whether the debt was incurred for personal or commercial reasons;
>
> (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and
>
> (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Id*. (quoting *BancBoston Mortg. Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1560 (6th Cir. 1992)).

First, there is no evidence that GBAZ or its president had a close personal relationship or friendship with the Contes. Nor is there any evidence that GBAZ and the Contes had previous business dealings. Third, the Contes undoubtedly incurred the debt—the purchase of a pizza franchise—for commercial reasons.

12

Fourth, the discrepancies between the information Mrs. Conte provided on the franchise application and the personal financial statement should have raised red flags for GBAZ. On the franchise application, Mrs. Conte left blank the spaces for total assets, total liabilities, and net worth. She only completed the spaces asking for the value of her home and money in any bank accounts. Based on the franchise application, the Contes' net worth was at most $142,000. Yet, weeks later, the Contes provided GBAZ with a financial statement indicating a net worth of $618,000. This large discrepancy was a red flag that should have alerted GBAZ to investigate further. *See, e.g., Advantage Bank v. Starr (In re Starr)*, No. 09-64079, 2012 WL 4714978, at *7 (Bankr. N.D. Ohio Oct. 2, 2012) (quoting *John Deere Co. v. Myers (In re Myers)*, 124 B.R. 735, 743 (Bankr. S.D. Ohio 1991)) ("[A] creditor's reliance on a financial statement is only reasonable if the financial statement is 'complete and contains no apparent inconsistencies.' "). There is no evidence in the record of what GBAZ did, if anything, to verify the information in the Contes' financial statement.

The final question is whether even minimal investigation would have revealed the falsehoods in the financial statement. A minimal investigation into the life insurance policy could have verified whether or not it had the listed cash surrender value. Similarly, the quarter of a million dollars in business "inventory"

13

21-01078-aih    Doc 21    FILED 11/21/22    ENTERED 11/21/22 14:07:07    Page 13 of 15

was presumably stored at a physical location, and GBAZ could have visited and verified it actually existed. Or GBAZ could have simply asked for more details about what this "inventory" consisted of and to what business of the Contes it belonged. In sum, when the Court applies the five factors and considers the record in a light most favorable to the Contes, a question of material fact exists as to whether GBAZ's reliance on the Contes' financial statement was reasonable.

### 2. Intent to Deceive

The last element that GBAZ must prove is that the Contes provided the false financial statement with the intent to deceive GBAZ. Intent includes both actual intent to deceive and gross recklessness. *Oster v. Clarkston State Bank*, 474 F. App'x at 427; *see also Blankenship v. Agrifund,* 2019 WL 5304212, at *8. The Court must consider "the totality of the circumstances to make an inference whether the debtor submitted a false financial statement with the intent to deceive." *Wilson & Muir Bank & Trust Co. v. Agrawal (In re Agrawal)*, No. 20-30242, 2022 WL 1913543, at *1 (Bankr. W.D. Ky. June 3, 2022) (citations omitted).

The evidence before the Court regarding the Contes' intent is, at best, ambivalent. While it appears they submitted false information in their financial statement, it is unclear why they did so. They apparently felt comfortable not including an inflated net worth in their franchise application. It is unclear why

14

they found it necessary to do so in the financial statement to GBAZ. Questions remain, and they leave room for an answer of honest intent. *See Blankenship v. Agrifund*, 2019 WL 5304212, at *8 (citing *Fifth Third Bank v. Collier (In re Collier)*, 231 B.R. 618, 626 (Bankr. N.D. Ohio 1999)). The evidence is not so one-sided regarding the Contes' intent and, therefore, summary judgment is inappropriate.

## CONCLUSION

For the reasons stated above, GBAZ is not entitled to summary judgment on its nondischargeability claim under § 523(a)(2)(B) against the Contes. Genuine issues of material fact remain regarding both the reasonableness of GBAZ's reliance and on the Contes' intent. Trial is still set for **December 12, 2022**, and the other deadlines in the Court's trial scheduling order remain in effect.

IT IS SO ORDERED.